**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**


EMMER HAMMOND                                                              PLAINTIFF

VS.                                                    CIVIL ACTION NO. 3:05cv632HTW-LRA


UNUM LIFE INSURANCE COMPANY OF AMERICA                       DEFENDANT


### <u>MEMORANDUM OPINION AND ORDER</u>

Before the court are the motions for summary judgment submitted by the

parties pursuant to Rules 56(a) and (b) of the Federal Rules of Civil Procedure[1]

[**Docket Nos. 24 & 25**].  Rule 56(c) of the Federal Rules of Civil Procedure provides

that, "... judgment sought shall be rendered forthwith if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law."

The parties in this dispute are Emmer Hammond, the plaintiff, who filed the

present lawsuit on October 20, 2005, against Unum Provident Corporation.  On March

13, 2006, this court entered an agreed Order substituting UNUM Life Insurance

Company of America (hereinafter "UNUM Life") as the proper party defendant.

---

[1]Federal Rule of Civil Procedure 56(a) provides that, "[a] party seeking to recover upon
a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time
after the expiration of 20 days from the commencement of the action or after service of a
motion for summary judgment by the adverse party, move with or without supporting affidavits
for a summary judgment in the party's favor upon all or any part thereof."  Rule 56(b) provides,
in pertinent part, that "[a] party against whom a claim ... is asserted or a declaratory judgment
is sought may, at any time, move with or without supporting affidavits for a summary judgment
in the party's favor as to all or any part thereof."

This lawsuit arises out of the final termination on June 13, 2005, of the plaintiff's disability insurance benefits under to a long term disability plan established and maintained by Liberty National Life Insurance Company.  This disability plan provided long term disability benefits up to twelve (12) months pursuant to a group insurance policy, No. 391989 001, issued to Liberty by UNUM life.  For disability based on mental illness, the maximum benefit period is twelve (12) months.  The policy also provides for up to six (6) months in short term benefits.

The Liberty National Plan is an "employee welfare benefit plan," as defined by the Employee Retirement Income Security Act of 1974 (ERISA), Title 29 U.S.C. § 1001, et seq.  The plaintiff's claim, therefore, is governed by ERISA pursuant to Title 29 U.S.C. § 1132 (e)(1).[2]

UNUM Life seeks summary judgment on its assertion that it did not abuse its discretion when it reviewed the plaintiff's medical records and circumstances, and then determined that the plaintiff was no longer entitled to disability benefits on June 13, 2005.  UNUM Life contends that its ultimate decision to deny the plaintiff continuing benefits under the terms of the plan should be upheld based on the administrative record presented to this court which includes the plaintiff's copious medical records.[3]

---

[2]Title 29 U.S.C. § 1132(e)(1) states that, "[e]xcept for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section."

[3]UNUM relies upon the following exhibits and documents contained in the administrative record:

The plaintiff counters in her own motion for summary judgment that UNUM Life abused its discretion in determining that the plaintiff was not entitled to continuing disability benefits beyond eighteen months under the Liberty National Life Insurance Company plan.  Based on the same medical records, the plaintiff says she is entitled to long-term disability benefits beyond the eighteen month payment period she already has received, and that she has been denied continuing benefits based on the "myopic" opinions of analysts who never spoke with her or examined her in order to determine her medical condition.

Moreover, contends the plaintiff, UNUM Life acted arbitrarily and in a manner inconsistent with the terms of the plan by failing to take into account that she has been declared disabled by the Social Security Administration who found that she no longer is able to perform past relevant work.  The UNUM policy states, adds plaintiff, that one may "receive payments beyond 18 months if you have been approved for disability benefits under the United States Social Security Act ... ."

A. Plaintiff's Initial Claim Form, attached hereto as Exhibit A;
B. Employers' Statements, attached hereto as Exhibit B;
C. Attending Physicians Statements, attached hereto as Exhibit C;
D. Medical records of Dr. Katrina Poe, M.D, attached hereto as Exhibit D;
E. Medical records of Dr. R.B. Newell, M.D., attached hereto as Exhibit E;
F. Medical records of Dr. Michael Whelan, Ph.D., attached hereto as Exhibit F;
G. Medical records of Dr. Billie King Shaw, D.C., attached hereto as Exhibit G;
H. Unum Medical Reviews, attached hereto as Exhibit H;
I. Unum Vocational Analysis, attached hereto as Exhibit I;
J. Unum correspondence regarding Plaintiff's claim, attached hereto as Exhibit J;
K. Complaint filed in U.S. District Court, attached hereto as Exhibit K;
L. Affidavit of Cynthia A. Garland, attached hereto as Exhibit L, including
EXHIBIT 1 - Administrative Record, EXHIBIT 2 - Policy, and
M. Unum's Memorandum in Support of Defendant's Motion for
Summary Judgment, which is being submitted separately to the
Court; and N. All other pleadings and papers on file in this cause.

3

Having reviewed all the documents presented, having heard argument, and having invited additional authority, this court finds that the defendant's motion for summary judgment is well taken and should be granted.

## **FACTUAL BACKGROUND**

The facts as related by UNUM Life are as follows:  the plaintiff worked as an insurance agent for Liberty National in its Greenwood, Mississippi, office.  As an employee of Liberty National, the plaintiff obtained insurance coverage under the plan (Policy No. 391989 001), which UNUM Life issued to Liberty National.  The plaintiff's claims for disability under the plan arose after she suffered injury from several falls in 2002.  The plaintiff also was being treated for depression and mental illness at the same time.  Plaintiff was examined by three primary healthcare providers, Dr. Katrina Poe, M.D.;  Dr. R.B. Newell, M.D.;  and Dr. Michael Whelan, Ph.D., who also referred the plaintiff to other health care providers.

### *The Plaintiff Files for Disability Benefits with UNUM and Social Security:*

On February 13, 2003, the plaintiff completed a disability claim form and forwarded it to UNUM Life.   Plaintiff included three "Attending Physicians Statements" ("APS") from Dr. Katrina Poe, M. D. (Family Medicine), from Dr. R.B. Newell, M.D. (Orthopedic Surgery), and from Dr. Michael Whelan, Ph.D (Psychology).  On October 22, 2003, UNUM Life approved the plaintiff's claim for disability benefits, stating that:

> We are approving benefits at this time.  However, in order to qualify for ongoing benefits, you must continue to meet the definition of disability in your contract.  According to the policy under which you are covered:

4

> Disabilities, due to a sickness or injury, which are primarily
> based on self-reported symptoms, and disabilities due to
> mental illness *have a limited pay period up to 12 months*
> (emphasis added).

The UNUM Life policy provided benefits for disabilities based on mental illness for only 12 months.  The UNUM policy also provided the plaintiff an additional six months of short-term disability benefits under the plan.

On March 21, 2003, the plaintiff additionally filed a claim for Social Security Disability Benefits, claiming an onset date of January 20, 2003.  After this claim was denied, the plaintiff filed for review on September 19, 2003.  On review, the Administrative Law Judge (ALJ) for the Commissioner of Social Security found the plaintiff to be a fifty-one year old individual with a high school education and past relevant work as a bank teller, clerk and insurance agent who had not engaged in gainful employment since January 20, 2003.  The ALJ listed the plaintiff's medically determinable severe impairments to be degenerative arthritis, fibromyalgia, depression and anxiety.  The ALJ noted that the plaintiff had a long history of worsening anxiety and depression;  that her physical impairments, while severe, did not meet the criteria of any listed impairment;  and that she retained the residual functional capacity to perform less than a full range of sedentary work activity.

While the plaintiff's claim for Social Security Disability initially was denied, the ALJ noted that evidence submitted subsequent to the state agency's determination negated the conclusion which led to the initial denial.  Citing Social Security Ruling 96-8p, which provides that an individual must have the ability to perform sustained *work related physical and mental activities,* the ALJ concluded, based upon the new

evidence, that the plaintiff's medically determinable severe physical impairments, while not alone enough to sustain a finding of disability, nevertheless were sufficient to qualify the plaintiff for Social Security Disability Benefits when taken together with the plaintiff's mental impairments.  The ALJ further concluded that the plaintiff lacked the mental capacity to meet the basis mental demands of competitive remunerative unskilled work.[4]  Thus, based on both her physical *and mental* impairments, the plaintiff was deemed eligible for Social Security Disability Benefits.

### *UNUM Decides to Cease Payment of Benefits After Eighteen Months:*

UNUM Life ultimately determined that it would cease paying benefits under the plan after the benefit period of eighteen months had expired.  On or about July 26, 2004, UNUM Life's Dr. Geron Brown reviewed the plaintiff's medical records.  His review concentrated on the plaintiff's physical disabilities since she had already received all the benefits she could for mental illness.  Based on the plaintiff's medical records, Dr. Brown found the diagnosis of mild lumbar degenerative disc disease at the L5-S1 segment to be supported.  However, he also stated that there were few objective physical findings to substantiate the level of the plaintiff's complaints regarding neck pain, hip and knee pain and low back pain.  Dr. Brown particularly noted that the MRI study reports for cervical spine, knees and hips were unremarkable or normal.  Minimal degenerative changes at the L5-S1 segment were reported, said Dr. Brown, with no indication of disc protrusion, central or foraminal stenosis.

---

[4]See 20 C.F.R. § 404.1545 for a description of the function by function assessment of a claimant's residual functional capacity in light of both physical and mental impairments.

Furthermore, said Dr. Brown, no restrictions and limitations for the plaintiff's work activities were supported from an orthopedic perspective.

Based on Dr. Brown's analysis, UNUM Life wrote to the plaintiff on July 28, 2004, informing her that the company was unable to continue paying benefits under the plan.  The
letter stated in summary:

> Based on management and clinical review of the data contained in the claim file, there appears to be insufficient clinical data supporting restrictions and limitations *from a physical condition beyond the Mental Nervous Maximum Duration date of July 15, 2004.* It is important to note that a diagnosis in and of itself does not equate to a totally disabling condition. There must be medical evidence supporting occupational restrictions and limitations.  Therefore, it is our position that you do not qualify for additional Long Term Disability benefits at this time.

On November 17, 2004, plaintiff  wrote UNUM and appealed its decision to discontinue benefits under the plan.  Plaintiff submitted a supplemental narrative report provided to her by Dr. Katrina Poe, M.D., who concluded that the plaintiff had "progressive degenerating arthritis of her spine and extremities."  UNUM Life determined to give the matter additional review and consider the plaintiff's additional medical evidence.

## UNUM REVIEWS PLAINTIFF'S MEDICAL HISTORY

UNUM Life considered the observations and findings of several physicians and other health care specialists in the process of reaching a final determination on the eligibility of the plaintiff for continuing long-term benefits.  This court has summarized these findings and set them forth below.  None of these records indicates a physical condition which would preclude work activity.

## A.  Plaintiff's Treatment History Under Dr. Poe

Dr. Katrina Poe began her diagnosis and treatment of the plaintiff in January of 2003.  Dr. Poe noted that the plaintiff represented that she suffered pain, anxiety, and depression.  Specifically, Dr. Poe noted the plaintiff's foot fracture from a recent fall, her anxiety and depression, and her low back pain.  Dr. Poe also noted "some edema of the right deltoid area with mild tenderness to palpation but full ROM [range of motion]."  Dr. Poe's assessment was "anxiety with depression; insomnia; polymyalgia;[5] and atypical chest pain" in the deltoid area.

On January 29, 2003, Dr. Poe admitted the plaintiff to the hospital for acute anxiety and chest pain.  On February 4, 2003, Dr. Poe noted plaintiff's tenderness in the cervical and lumbar spine, problems with her knees and her depressed mood.  As Dr. Poe continued to observe and treat the plaintiff, on February 12, 2003, the plaintiff suffered an anxiety attack.  Dr. Poe observed that by February 18, 2003, plaintiff had reported improvement, and that she was less nervous and anxious.  Dr. Poe's assessment stated that the plaintiff had "anxiety and depression, along with degenerative arthritis."

On February 28, 2003, Dr. Poe observed edema (swelling) in plaintiff's lower extremities, pain when flexing her knees and arms, and tenderness along her lumbar vertebrae, but also observed that the plaintiff seemed to be less anxious and had a

---

[5]Polymyalgia rheumatica, or "PMR", is an inflammatory disorder that causes widespread muscle aching and stiffness, primarily in the neck, shoulders, upper arms, thighs and hips.  See www.mayoclinic.com

8

pleasant mood.  On March 14, 2003, Dr. Poe examined plaintiff again and made observations at that time which were consistent with her previous observations.

On April 21, 2003, Dr. Poe noted "no acute distress" but experiencing "moderate crepitus" (cracking sounds) in both knees with "trace of bilateral lower extremity edema."  Dr. Poe further noted tenderness in plaintiff's lumbar muscles and a "mildly unsteady gait."

On May 2, 2003, Dr. Poe noted tenderness in plaintiff's neck and knees, with "minimal crepitus and trace of bilateral lower extremity edema."  Dr. Poe also commented on the plaintiff's continued depressed mood.  On May 28, 2003, after Dr. Poe observed "sinusitis; polymyalgias; (and) degenerative arthritis," she had the plaintiff admitted to the hospital between June 10 and June 12, 2003.

Dr. Poe apparently had no contact with the plaintiff for the next eleven to twelve months.

On June 2, 2004, Dr. Poe had Dr. William E. Studdard, M.D., review an MRI of the plaintiff's spine.  Dr. Studdard stated that plaintiff's cervical vertebra were normal in height and normally aligned.  Dr. Studdard also observed that the signal intensity of the cervical vertebra was normal.  The intervertebral discs were normal in height and no significant disc herniation was identified.  Dr. Studdard also observed that the cervical spinal canal was normal in diameter and that the cervical spinal cord was normal in size and signal intensity.  No abnormality was seen at the foramen magnum or in the upper thoracic spine, and the prevertebral soft tissues had a normal appearance.  Dr. Studdard further noted that plaintiff's lumbar vertebrae were normal in height and normally aligned.  The signal intensity of the lumbar vertebrae was normal.

9

Dr. Studdard then observed that the L5-S1 disc was decreased in height, and that there was a generalized disc bulge at L5-S1.  However, he repeated that the lumbar spinal canal was normal in diameter, and that the conus medullaris was normal in size, position, and signal intensity.

Dr Studdard further found no abnormal signal in the upper sacrum. The prevertebral soft tissues at that location he noted to have a normal appearance. Dr. Studdard identified nothing abnormal about plaintiff's spine, noting only a moderate generalized degenerative disc bulge at L5-S1.

Dr. Studdard then evaluated the plaintiff's hips, head and neck, finding no marrow edema in either femoral head or neck or in either acetabulum.  No hip joint effusion was observed on either side.  The soft tissue surrounding the hips he found to have a normal appearance and symmetry. No abnormality was identified in the soft tissues within the pelvis. No marrow edema was present in that portion of the bony pelvis.  Dr. Studdard concluded that there was no abnormality in either hip.

Dr. Poe once again had the plaintiff admitted to the hospital for her pain on August 4 through August 5 of 2004.  Dr. Poe determined to refer the plaintiff to Dr. Moses Jones, M.D., and did so on August 10, 2004.  Dr. Jones reviewed the plaintiff's MRI and noted some mild degenerative changes at L5,S1, but nothing of surgical significance.  Dr. Jones also noted that the plaintiffs symptoms were totally out of proportion to this one abnormal finding.

On October 13, 2004, Dr. Richard E. Weddle, M.D. (Neurology) evaluated the plaintiff pursuant to Dr. Poe's referral.  Dr. Weddle noted that the plaintiff was an obese, black female who was in no acute distress at the time of examination.  Dr.

Weddle observed the plaintiff to be alert and cooperative, walking with a cane.  Dr Weddle stated that, "I cannot be sure, some of it appears to be embellishment.  I cannot find anything on her cranial nerve examination.  She has good strength throughout in both upper and lower extremities.  Her reflexes are physiological, and she has no definite sensory loss.  Nerve conductions done today are perfectly normal, and the EMG did not show any myopathic discharges."

On November 2 through November 5, 2004, Dr. Poe put the plaintiff back in the hospital for symptoms associated with anemia and diabetes.  At  this time, UNUM Life had discontinued benefits and Dr. Poe had asked that this determination by UNUM Life be reconsidered.

On November 15, 2004, Dr. Poe evaluated Hammond again, noting a new onset of diabetes, and made an assessment which stated, "new onset of DM; anemia s/p blood transfusion; degenerative arthritis; fibromaylgia."  On November 29, 2004, Dr. Poe noted that the plaintiff was experiencing increases in blood sugar due to her diabetes, and pain related to degenerative arthritis.  On December 13, 2004, Dr. Poe noted lower back pain, related to degenerative arthritis, and encouraged plaintiff to take Tylenol for the associated pain.

The plaintiff continued regular visits to Dr. Poe in early 2005, with the same reports of pain.  Dr. Poe made similar conclusions regarding the plaintiff's complaints of pain.  On April 28, 2005, the plaintiff underwent an impairment rating, following a referral by Dr. Poe to a physical therapist who, after performing an evaluation, assigned a 28% impairment rating to the plaintiff's body as a whole.  UNUM Life

11

considered all this information in its re-evaluation of the plaintiff's eligibility for continuing long-term benefits.

### B.  Plaintiff's Treatment History Under Dr. Newell

Dr. R.B. Newell, M.D., began his diagnosis and treatment of the plaintiff on December 6, 2002, when he examined her after a fall.  Dr. Newell examined the plaintiff's injury and found a fracture of the base of the fifth metatarsal (foot) with slight displacement.  Dr. Newell put the plaintiff into an ankle-foot orthotic (AFO) brace and gave her crutches.  On December 20, 2002, Dr. Newell noted that the fifth metatarsal fracture was still present.  Plaintiff was still using the AFO brace.  Dr. Newell gave the plaintiff a slip for light duty at work, stating that the plaintiff would be able to return to work on January 13, 2003.  Dr. Newell noted the following:

> X-rays reveal her fracture to be healing in good position. I think that she probably needs to use the AFO brace a little while longer.  She will remain at light duty at work. She is given a slip for that.  Recheck her back her in two weeks with another x-ray. We can probably come out of the AFO brace then.

On January 27, 2003, Dr. Newell's X-rays revealed the plaintiff's  fracture to be healing satisfactorily.   Dr. Newell gave the plaintiff a slip to be off work, noting that the plaintiff "thinks she is able to work at this time."

On February 13, 2003, Dr. Newell scheduled an MRI of plaintiff's cervical spine and LS spine.  On February 27, 2003, Dr. Newell observed some degenerative arthritic changes, but nothing really acute as far as a slipped disk.

On March 31, 2003, Dr. Newell stated in an office note that an x-ray indicated that plaintiff's foot was healing, that the plaintiff still was experiencing pain relating to her foot, and that he would prescribe pain medication, and physical therapy.

On May 1, 2003, Dr. Newell wrote Dr. Poe a letter regarding plaintiff's condition, stating that "this patient has some generalized arthritis in multiple areas.  I don't really know of anything else to do for her other than what we are doing presently.  If you have any suggestions concerning this, I would be happy to hear from you."

On August 18, 2003, Dr. Newell examined the plaintiff again, noting that, "This lady comes back in mainly to get a form filled out for insurance, which we have done. She also is having some problems with her left knee. We have taken an x-ray which reveals minimal degenerative arthritic changes, but no[thing] severe... ."

On December 23, 2003, a Dr. Bennett (in Dr. Newell's office) evaluated the plaintiff, noting that, plaintiff had trouble ambulating.  Dr. Bennett's notations state:

> I am not sure if this is because of her knees or the foot drop, or her old foot injury.  Has good motion of the hips, knees, and ankles. On the left knee she has some medial joint line tenderness. To a lesser degree, some lateral joint line tenderness. The right knee has some lateral joint line tenderness. She has some tenderness over the poplieteal fossa bilaterally. She has no ligamentous instability noted.  Neurovascularly intact distally. As noted on her x-rays she has mild arthritic changes.

On January 8, 2004, Dr. Bennett again evaluated the plaintiff following an MRI of her knee, and stated that the knee shows no evidence of meniscal or cruciate tear; no evidence of a Baker's cyst, no evidence of AVN or bone contusion.  He concluded that the knee MRI was "[b]asically normal."

13

### C.  **Chiropractic Treatment**

Dr. Billie King Shaw, D.C. (CHIROPRACTOR) examined the plaintiff on February 18, 2005, diagnosing her with "nonallopathic Lesions of the Cervical Region, not elsewhere classified;  Sciatica;  Nonallophathic Lesions of the Thoracic Region, not elsewhere classified;  and Nonallopathic Lesions of Sacral Region, not elsewhere classified.  Patient's condition is chronic and persistent.  A very good degree of vertebral movement at C1-C4, T1-T4, L1-L5 and the left ilium was observed today during adjustment of the spine."  Between February 18, 2005, and May 6, 2005, Dr. Shaw continued to evaluate the plaintiff on a regular basis and make "adjustments."

### D.  **Psychological  Treatment**

The record in this case includes the psychological evaluations of one Dr. M. Whelan, Ph.D., who works with the Life Help Mental Health Center in Greenwood, Mississippi.  Dr. Whelan began evaluation and treatment of the plaintiff on or about February 17, 2003, for "Major Depression" and associated mental disorders.   Dr. Whelan's records relate to plaintiff's mental, not her physical condition.  UNUM's policy already has paid benefits for twelve months, the maximum time for payment of benefits for any mental disability, plus the additional six months of short term benefits.

### **UNUM'S RE-EVALUATION OF THE PLAINTIFF'S ELIGIBILITY**

UNUM Life re-evaluated on February 22, 2005.  UNUM's Dr. Valencia Clay, M.D., reviewed the plaintiff's medical records, and noted multiple inconsistencies in the plaintiff's and Dr. Poe's reports, as well as inconsistencies in plaintiff's examinations. Dr. Clay found that the plaintiff's claim of impairment was based solely on her report of

14

symptoms and reduced ability to function.  Her psychological problems, said Dr. Clay, are playing a role in her perception of pain as well as her inconsistent presentation to different providers (doctors).  Dr. Clay noted as follows:

> • Plaintiff consistently reports pain, although in varying locations, and loss of functional capacity.

> • There is no documentation of activity that is significantly inconsistent with her reports of symptoms and impairment.

> • However, there are no objective findings that support the intensity and persistence of the reported symptoms and impairment, and multiple inconsistencies in examinations.

> • It is uncertain if she has actually been diagnosed with fibromyalgia. The rheumatology notes have not been provided for review and the records only document that Mrs. Hammond reported this diagnosis to Dr. Poe.

On February 22, 2005, Dr. Clay, on behalf of UNUM, wrote Dr. Poe, asking several questions in order to find any support for plaintiff's claims of continuing disability.  Dr. Poe did not respond.  So, on March 24, 2005, Dr. Clay wrote the plaintiff, informing her that UNUM's previous decision regarding the denial of continued benefits was affirmed.

On June 6, 2005, UNUM's Dr. Clay reviewed the additional medical records submitted by the plaintiff and determined that the available clinical data did not support the restrictions and limitations due to the plaintiff's orthopedic condition.  Dr. Clay's notes on this occasion stated as follows:

> • The lower extremity strength testing was so inconsistent that it was deemed invalid. It is stated that knee extension testing at such a low level would preclude the ability to stand. This testing corroborates the reported embelishment of symptoms noted in my previous report.

15

• Despite the inconsistent examination, some impairment was noted. The examiner took into account the reported degenerative joint disease, gait disturbance and chronic pain and determined the whole person impairment rating to be 28%.

• With a reasonable degree of medical certainty, this level of impairment would no [sic] support the inability to perform activities at a sedentary to light level. Restricting to occasional walking/standing, no lifting greater than 20 pounds, and providing the opportunity to change positions as needed would be reasonable.

On June 10, 2005, UNUM had the plaintiff's file and work activity reviewed by a vocational rehabilitation consultant who stated in relevant part as follows:

the occupation is considered to be light, would allow for control over positioning and require no more than occasional walking/ standing. The occupation can be performed with the restrictions and limitations presented.  I have reviewed all occupational and vocational evidence provided to me by Company personnel, including analysis of current limitations and restrictions by medical and clinical personnel, bearing on the vocational assessment(s) which I am by my training and experience capable to perform.

On June 13, 2005, UNUM again wrote to the plaintiff to inform her that it had completed the second appellate review of her claim, and based upon this additional review, the decision to terminate benefits again was being affirmed.  The plaintiff then filed this action on October 20, 2005.

## ERISA SUMMARY JUDGMENT STANDARD

The summary judgment standard applied to ERISA claims is unique.  This is because this court acts in an appellate capacity reviewing the decisions of the administrator.  In *Firestone Tire & Rubber Company v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the United States Supreme Court discussed which

16

of two possible standards of review, *de novo* or abuse of discretion, should apply to

ERISA actions.  The *Firestone* Court stated:

> [a] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed
> under a de novo standard unless the benefit plan gives the administrator
> or fiduciary discretionary authority to determine eligibility for benefits or to
> construe the terms of the plan.... Of course, if a benefit plan gives
> discretion to an administrator or fiduciary who is operating under a
> conflict of interest, that conflict must be weighed as a "facto[r] in
> determining whether there is an abuse of discretion."

*Id.*

An abuse of discretion standard applies when a claimant's policy reserves to the

plan administrator the discretion to determine the claimant's entitlement to benefits.

*Gooden v. Provident Life & Accident Insurance Company*, 250 F.3d 329, 332-34 (5th

Cir. 2001).  The abuse of discretion standard also is referred to as an arbitrary and

capricious standard, and the United States Court of Appeals for the Fifth Circuit has

noted that there is only a "semantic, not a substantive, difference" between the

arbitrary and capricious and the abuse of discretion standards in the ERISA benefits

review context.  *Meditrust Financial Services Corporation v. The Sterling Chemicals ,*

*Inc.*, 168 F.3d 211, 214 (5th Cir. 1999).  In *Gooden*, the Fifth Circuit defined "abuse of

discretion" as when a claim is denied "[w]ithout some concrete evidence in the

administrative record."  *Gooden*, 250 F.3d at 333.  In *Vega v. National Life Insurance*

*Services, Inc.*, 188 F.3d 287 (5th Cir. 1999), a decision rendered prior to *Gooden*, the

Fifth Circuit provided more detail regarding the abuse of discretion standard when it

stated:

> Plainly put, we will not countenance a denial of a claim solely because  an
> administrator  suspects  something  may  be  awry.    Although  we  owe

17

> deference to an administrator's reasoned decision, we owe no deference to the administrator's unsupported suspicions. Without some concrete evidence in the administrative record that supports the denial of the claim, we must find the administrator abused its discretion.

*Id.*, at 302.

The abuse of discretion standard must be adjusted in cases where the administrator has discretionary authority and is self-interested. The Supreme Court in *Bruch* held that a conflict of interest, i.e., a self-interested party, is a "factor" to be considered under the abuse of discretion standard. The Fifth Circuit in *Vega* articulated how courts are to measure this factor. *Vega*, 188 F.3d at 296-299. Courts are to apply a "sliding scale" standard, in which the abuse of discretion standard applies, but less deference is granted the administrator in proportion to the administrator's apparent conflict. *Id.* at 296. "The greater the evidence of conflict on the part of the administrator, the less deferential the abuse of discretion standard will be." *Id.* at 297. The Fifth Circuit described the application of the sliding scale to the abuse of discretion standard as follows:

> We hold today that, when confronted with a denial of benefits by a conflicted administrator, the district court may not impose a duty to reasonably investigate on the administrator. Under our own precedent and the Supreme Court's ruling in *Bruch*, we must give deference to the administrator's decision. That the administrator decides a claim when conflicted, however, is a relevant factor. In a situation where the administrator is conflicted, we will give less deference to the administrator's decision. In such cases, we are less likely to make forgiving inferences when confronted with a record that arguably does not support the administrator's decision. Although the administrator has no duty to contemplate arguments that could be made by the claimant, we do expect the administrator's decision to be based on evidence, even if disputable, that clearly supports the basis for its denial.

*Id.* at 299.

18

So, a plan administrator completes two tasks in making a benefit determination: (1) determining the facts underlying the benefit claim;  and (2) construing the terms of the plan.  The administrator's factual determinations are reviewed for abuse of discretion.  *Chacko v. Sabre, Inc.*, 473 F.3d 604, 609-10 (5th Cir. 2006).  The administrator's construction of the plan's terms also is reviewed for abuse of discretion where the plan expressly confers discretion.  *Id.*, 610, *Bruch*, 489 U.S. at 115, 109 S.Ct. 948.

## THE MERITS OF UNUM'S DENIAL OF CONTINUING BENEFITS

This court has evaluated this matter based on the administrative record as it existed at the time of UNUM's final denial of benefits.  *Vega v. Natl. Life Ins. Serv., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999) (internal cites omitted);  *Lewis v. CNA Group Life Assurance Co.*, 414 F. Supp.2d 652, 654 (S.D. Miss. 2006).  The plaintiff bears the burden of demonstrating that she is entitled to benefits under the terms of the plan.  *Perdue v. Burger King Corp.*, 7 F.3d 1251, 1254 (5th Cir. 1993);  *Lewis*, 414 F.Supp.2d at 654-55;  *Kirschenheuter v. Bd. of Trustees of the GSC-ILA Pension Plan & Trust*, 341 F.Supp.2d 624, 628 (S.D. Miss. 2004).  Under the abuse of discretion standard, this court determines whether substantial evidence exists to show that UNUM's ultimate decision meets established principles of reasonableness.  *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2005);  *Vega*, 188 F.3d at 298. This court is not called upon to evaluate whether all the symptoms listed in the medical records submitted in this case should have been deemed sufficient to establish disability.  Instead, this court is concerned only with whether UNUM was reasonable in

19

concluding that they were not.  *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004);  *Gooden v. Provident Life & Accident Ins. Co.*, 250 F.3d 329, 331 (5th Cir. 2001).

The court is persuaded that UNUM's decision to cease payment of benefits after eighteen months falls within the bounds of reasonableness and is supported by substantial evidence.  UNUM's determination that the plaintiff was not totally disabled within the meaning of the policy was reasonable.  In *Ellis v. Liberty Life Assurance Company of Boston*, 394 F.3d 262, 273 (5th Cir. 2005), the Fifth Circuit stated that, "[t]he law requires only that substantial evidence support a plan fiduciary's decisions, including those to deny or to terminate benefits."  "Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 273.  However, this is not the end of the matter.

### SHOULD UNUM GIVE DEFERENCE TO THE SOCIAL SECURITY DETERMINATION

Next, the plaintiff refers to that provision of the ERISA plan which states that, "[y]ou will continue to receive payments beyond 18 months if you have been approved for disability benefits under the Social Security Act ... ."  According to the plaintiff, this provision requires UNUM to continue long term benefit payments beyond 18 months, and failure to do so is an abuse of discretion.

UNUM responds that the ERISA plan also provides that payments will stop, "after 18 months of payments and social security disability benefits have been approved, when you are able to work in any gainful occupation on a part-time basis but

choose not to; ..."  UNUM contends that its evaluation and reevaluation of the plaintiff's medical records reasonably establish that she is able to work, at least in a part-time capacity, if she only would choose to do so.  So, says UNUM, its finding that the plaintiff is not eligible for continuing benefits beyond 18 months is based on substantial evidence in the administrative record, evidence which reasonable minds might accept as sufficient to support UNUM's conclusion.  *See High v. E-Systems, Inc.*, 459 F.3d 573, 576 (5th Cir. 2006).

Differences between the Social Security disability program and ERISA benefits plans caution against importing standards from the first into the second.  ERISA plans are not subject to the rules and regulations governing Social Security determinations such as Social Security Ruling 96-8p and 20 C.F.R. § 404.1545.  *See also* 20 C.F.R. §§ 404.1527(d)(2) and 416.927 (d)(2), which sets forth the SSA regulation that accords "special weight" to the medical opinion of an applicant's treating physician.  That regulation, as well as many others, does not apply to an ERISA plan.  *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 123 S.Ct. 1965 (2003) (noting the differences between entitlement to social security benefits based on federal criteria and ERISA plan benefits based on the interpretation of the terms in the plan at issue).

In *Black & Decker Disability Plan v. Nord*, the United States Supreme Court determined that entitlement to Social Security benefits is measured by a uniform set of federal criteria, but a claim for benefits under an ERISA plan often turns on the interpretation of plan terms that differ from SSA criteria.  In the instant case, UNUM reviewed the plaintiff's medical records and the terms of the ERISA plan to conclude that the plaintiff had received maximum benefits provided by the plan.

So, the determination that a claimant suffers from a disability under Social Security regulations does not require an ERISA plan administrator to reach the same conclusion. *Coker v. Metropolitan Life Insurance Company,* 281 F.3d 793, 798 (8th Cir. 2002), citing *Schatz v. Mutual of Omaha Insurance Company*, 220 F.3d 944, 950, n. 9 (8th Cir. 2000).  In the instant case, the ALJ did not conclude that the plaintiff was entitled to disability benefits due to her physical impairments alone.  First, the ALJ determined that the plaintiff's physical impairments were insufficient to justify a finding of disability.  Secondly, the ALJ considered the plaintiff's mental impairments and proceeded to evaluate her residual functional capacity based on both her physical and mental impairments.  For instance, the ALJ followed Social Security Ruling 96-8p and 20 C.F.R. § 404.1545 when he evaluated the plaintiff and determined that she was eligible for disability benefits.  These rulings and regulations do not apply to an ERISA plan.

Certainly, the administrative record in this case shows that the plaintiff suffers from persistent pain and has some physical limitations.  However, those limitations, in the opinion of the plan administrator for UNUM, did not render her incapable of performing some work on a part-time basis.  This court finds no abuse of discretion in UNUM's final conclusion.

## THE CONFLICT OF INTEREST ISSUE

Where an ERISA administrator's decision is "tainted by a conflict of interest," courts implement a sliding scale standard of review.  *MacLachlan v. ExxonMobile Corp*, 350 F.3d 472, 478 (5th Cir. 2003).  The standard of review does not change and

remains *abuse of discretion*.  The existence of a conflict of interest, if any, is simply a factor to be considered in determining whether the administrator abused its discretion. *Vega v. National Life Insurance Services Company,* 188 F.3d 287, 296-97 (5th Cir. 1999).  Less deference is given to the administrator, in proportion to the evidence of conflict.  *Id.*  Where "a minimal basis for a conflict is established, the decision is reviewed with 'only a modicum less deference than we otherwise would.' " *Lain v. UNUM Life Insurance Company of America*, 279 F.3d 337, 343 (5th Cir. 2002) (quoting *Vega*, 188 F.3d at 301).

Abuse of discretion is synonymous with the arbitrary and capricious standard. *Aboul-Fetouh v. Employee Benefits Committee*, 245 F.3d 465, 472 (5th Cir. 2001). The assessment of whether an abuse of discretion has take place is focused on whether the record adequately supports an administrator's decision.  *Vega*, 188 F.3d at 298.  As noted previously, an administrator's decision must be supported by substantial evidence in the administrative record, which is evidence that a reasonable mind might accept as sufficient to support a conclusion.  *High v. E-Systems, Inc.*, 459 F.3d 573, 576 (5th Cir. 2006).  "Arbitrary and capricious" means that federal courts owe due deference to the administrator's factual conclusions which reflect reasonable and impartial judgment.  *Southern Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98, 101 (5th Cir.1993).

In cases involving interpretation of a plan, the abuse of discretion analysis can involve a two-step process.  "First, a court must determine the legally correct interpretation of the plan ... [i]f the administrator did not give the plan the legally correct

interpretation, the court must then determine whether the administrator's decision was an abuse of discretion."  *Wildbur v. ARCO Chemical Company*, 974 F.2d 631, 637 (5th Cir. 1992).   "[A] decision is not arbitrary and capricious if it is based on a reasonable interpretation of the plan's terms and made in good faith." *Guin v. Fortis Benefits Insurance Company,* 256 F.Supp.2d 542, 547-48 (E.D. Tex. 2002), citing 2 Ronald J. Cooke, *ERISA Practice and Procedure* § 8:14 (2d ed. 1995).

This court has reviewed the administrative record and all relevant provisions of the ERISA plan in question and is persuaded that the UNUM administrator's interpretation of the plan is not arbitrary and capricious, but a reasonable one based on substantial evidence.

## CONCLUSION

The motion for summary judgment submitted by the plaintiff Emmer Hammond [**Docket No. 24**] is denied.  The motion for summary judgment submitted by the defendant UNUM Life Insurance Company of America [**Docket No. 25**] is granted. The court finds that UNUM's decision falls within the bounds of reasonableness and is supported by the evidence contained within the record.  Therefore, it cannot be said that UNUM abused its discretion.  Accordingly, this lawsuit is dismissed.  The court will enter a separate judgment.

**SO ORDERED AND ADJUDGED, this the 31ST day of March, 2008.**

**s/ HENRY T. WINGATE**

**CHIEF UNITED STATES DISTRICT JUDGE**

Civil Action No. 3:05cv632 HTW-LRA
Memorandum Opinion and Order

24